**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| ADDISON INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| LOU BUDKE'S ARROW FINANCE | ) | |
| COMPANY, | ) | |
| *Address* | ) | |
| | ) | |
| and | ) | |
| | ) | |
| RICHARD KYLES, on behalf of himself and | ) | |
| all others similarly situated, | ) | |
| *address* | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff Addison Insurance Company ("Addison"), by and through counsel, pursuant to 28 U.S.C. § 2201, and for its Complaint for Declaratory Judgment, states as follows:

## NATURE OF THE ACTION

1.      Plaintiff Addison brings this action pursuant to 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgments) for the purpose of obtaining declaratory relief against Defendants Lou Budke's Arrow Finance Company ("Lou Budke") and Richard Kyles, on behalf of himself and all others similarly situated ("Defendants"), specifying that it has no obligation to provide coverage for indemnity for any judgments against or settlements incurred by Lou Budke in the case of *Lou Budke's Arrow Finance Company v. Richard Kyles, et al.*, Case No. 15SL-AC29334-01, filed in the Associate Circuit Court of St. Louis County, Missouri (the "Underlying Action").

1286.125

## PARTIES

2.      Plaintiff Addison is and was at all material times an insurance corporation organized under the laws of the State of Iowa with its principal place of business in Cedar Rapids, Iowa, authorized to do business in Missouri.

3.      Defendant Lou Budke is a Missouri corporation in good standing with a principal place of business at 3528 Hampton Ave., St. Louis, MO 63139.

4.      Defendant Richard Kyles is an individual, and a citizen of Illinois who may be served at 1701 S. 12th Street, Mount Vernon, IL 62864.

5.      The Putative Class represented by Defendant Kyles is defined as "all persons who Lou Budke mailed a presale notice or post-sale notice," excluding "persons from whom Lou Budke has obtained a final deficiency judgment or who filed for bankruptcy after the date on their presale notice and whose bankruptcy ended in discharged rather than dismissal."

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act, and pursuant to 28 U.S.C. § 1332 because Plaintiff is not a resident of this State, there is complete diversity of citizenship between Plaintiff and Defendants, and because the amount in controversy exceeds $75,000, exclusive of interest and costs, as alleged in paragraph 28, *infra*.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this suit occurred in this district.

## UNDERLYING FACTS

### A.    The Underlying Lawsuit

8.    The underlying dispute arises out of Lou Budke's attempts to collect on a Retail Installment Contract executed by Defendant Kyles on or about 4/9/2015 to finance the purchase of an automobile.

9.    On November 18, 2015, Lou Budke filed the Underlying Action in the Associate Circuit Court of St. Louis County, Missouri, against Kyles captioned *Lou Budke's Arrow Finance Company v. Richard Kyles, et al.*, Case No. 15SL-AC29334, alleging that Kyles defaulted on the Retail Installment Contract for the purchase of an automobile and that Kyles owed Lou Budke $3,206.18 under said contract. (Lou Budke's Petition and accompanying exhibits, attached hereto as **Exhibit A**)

10.    On August 4, 2016, Kyles filed a Counterclaim against Lou Budke alleging Lou Budke "engaged in a deceptive pattern of wrongdoing followed by Lou Budke regarding collection, enforcement, repossession and disposition of collateral, and collection of aged accounts" and initiated a consumer class action on behalf of himself and the Class. (Kyles's Counterclaim and accompanying exhibits, attached hereto as **Exhibit B**)

11.    The Court concluded that the Counterclaim exceeded the jurisdictional limits of Associate Circuit Court and certified the case for transfer to the Circuit Court of St. Louis County, on August 29, 2016, at which time it was assigned Case No. 15SL-AC29334-01.

12.    The Counterclaim alleges that Lou Budke violated several provisions of the Uniform Commercial Code ("UCC") by engaging in an unlawful and deceptive pattern of wrongdoing, including charging interest on loans during the time when consumers were allegedly in default on their automobile loans but before deficiency judgments were obtained; sending Kyles

and class members presale notices of intent to dispose of property which did not comply with the UCC; sending post-sale notices after disposing of the property which did not comply with the UCC; failing to obtain necessary consent to repossess property. The predicate for all acts and/or omissions for which damages and other relief are sought in the Counterclaim are directly caused by, relate to, and arise out of the provision of loan services by Lou Budke. (Counterclaim, **Exhibit B ¶¶ 1-4, 16-22**)

13. In the Counterclaim, Kyles claimed Lou Budke's actions were "wanton, outrageous, and/or malicious because of its reckless indifference to or conscious disregard for the consumer rights of Kyles and the Missouri Subclass," and sought punitive damages. (Counterclaim, **Exhibit B ¶¶ 85, 86**)

14. Kyles filed an Amended Counterclaim on July 21, 2017 ("Amended Counterclaim"), which adds the baseless and conclusory allegations that "[t]his lawsuit is not due to Lou Budke's rendering of or failure to render any professional service, including loan services. This lawsuit is not due to Lou Budke's repossession of the class members' collateral," which are without foundation or support under the applicable facts. (Amended Counterclaim and accompanying exhibits, attached hereto as **Exhibit C ¶ 1**)

15. Kyles alleges that: the defective presale and post-sale notices were not sent with knowledge of their falsity; the reporting of false or inaccurate derogatory information on the class members' credit reports was not done with knowledge of its falsity; acts that violated the statutes required no professional skill; acts that violated the statutes required no specialized knowledge, labor, or skill; Lou Budke did not intend to violate Chapter 408 or the UCC and did not intend injury to the class; Lou Budke did not know the presale and post-sale notices, and its reporting of information on the class members' credit reports would violate the rights of the class members or

inflict injury upon them; the negligent misrepresentations in the notices were the proximate cause of the loss of use of the vehicles because it precluded the class members from reclaiming their collateral before it was sold; the negligent misrepresentations in the notices were also the proximate cause of the loss of use of the: (a) class member's surplus funds owed them after the sale of the collateral; and (b) the money each class member paid, which was barred by statute and common law. (Amended Counterclaim, **Exhibit C** ¶¶ 36-43)

16.    The foregoing constitute conclusory allegations, made for the sole purpose of attempting to establish insurance coverage where none exists, and are subject to proof of submissible facts supporting said allegations.

17.    Kyles alleged that "[t]he Class comprises all person ("Class") within the applicable statute of limitations:

    a.    who are named as borrowers or buyers on a loan or financing agreement with Lou Budke, assigned to Lou Budke or owned by Lou Budke;
    b.    whose loan or financing agreement was secured by collateral;
    c.    whose collateral was repossessed, voluntarily or involuntarily; and
    d.    whose collateral was disposed.

(Amended Counterclaim, **Exhibit C** ¶ 45)

18.    Kyles alternatively alleged that "[t]he Class comprises all persons ("Class") within the applicable statute of limitations:

    a.    who Lou Budke failed to send a presale notice; or
    b.    who Lou Budke sent a presale notice that stated anywhere in the notice the phrase: "will or will not, as applicable."

(Amended Counterclaim, **Exhibit C** ¶ 46)

19.    Kyles alleged a Missouri Subclass "comprises all persons within the Class ("Missouri Subclass") who obtained a Missouri Certificate of Title for a motor vehicle identifying Lou Budke as the lienholder, or who are named as borrowers or buyers with a Missouri address

on a loan or financing agreement with Lou Budke, assigned to Lou Budke or owned by Lou Budke; and:

    a.    who obtained a Missouri Certificate of Title for a motor vehicle identifying Lou Budke as the lienholder, or who are named as borrowers or buyers with a Missouri address on a loan or financing agreement with Lou Budke, assigned to Lou Budke or owned by Lou Budke;

    b.    whose loan or financing agreement was secured by a motor vehicle or other collateral;

    c.    whose motor vehicle or other collateral was repossessed, involuntarily or voluntarily; and

    d.    whose motor vehicle or other collateral was disposed.

(Amended Counterclaim, **Exhibit C** ¶ 47)

20.    Kyles alternatively alleged that the "Missouri Subclass comprises all persons within the Class ("Missouri Subclass") who obtained a Missouri Certificate of Title for a motor vehicle identifying Lou Budke as the lienholder, or who are named as borrowers or buyers with a Missouri address on a loan or financing agreement with Lou Budke, assigned to Lou Budke or owned by Lou Budke; and:

    a.    who Lou Budke failed to send a presale notice;

    b.    who Lou Budke sent a presale notice that stated anywhere in the notice the phrase: "will or will not, as applicable;"

    c.    who Lou Budke failed to send a post-sale notice; or

    d.    who Lou Budke sent a post-sale notice after disposing the collateral or receiving insurance proceeds for the same.

(Amended Counterclaim, **Exhibit C** ¶ 48)

21.    Kyles alleged Count I on behalf of the Class, claiming Lou Budke:

    a.    violated the UCC by failing to provide the presale notice in the form and manner required under the UCC before disposing of collateral secured by loans entered by, assigned to, or owned by Lou Budke;

    b.    did not use the form of notification provided in § 9-614(3) of the UCC when sending presale notices to Kyles and the Class;

    c.     sent a presale notice to Kyles and the Class which included additional language or content not authorized or allowed by law, rendering the presale notices misleading or unreasonable in violation of §§ 9-611 and 9-614 of the UCC.

    d.     failed to provide "reasonable authenticated notice of disposition" to Kyles and the Class as required under § 9-611 of the UCC; and

    e.     did not send post-sale notices, or any other explanation or writing, to Kyles and the Class providing all the information, in the requisite order, as required by § 9-616 of the UCC.

(Amended Counterclaim, **Exhibit C** ¶¶ 75-79)

22.     Kyles claimed that he and the Class suffered actual damages including:

    a.     loss of use of tangible property and cost of alternative transportation;

    b.     loss resulting from the inability to obtain, or increased costs of, alternative financing;

    c.     harm to credit worthiness, credit standing, credit capacity, character, and general reputation;

    d.     harm caused by defamation, slander and libel;

    e.     harm caused by invasion of privacy; and

    f.     other uncertain and hard-to-quantify actual damages.

(Amended Counterclaim, **Exhibit C** ¶ 81)

23.     On November 6, 2019, the Court certified the Class as "all persons who Lou Budke mailed a presale notice or post-sale notice," excluding "persons from whom Lou Budke has obtained a final deficiency judgment or who filed for bankruptcy after the date on their presale notice and whose bankruptcy ended in discharged rather than dismissal." (Order of Class Certification, attached hereto as **Exhibit D**)

24.     On October 30, 2023, Lou Budke and Kyles filed a Joint Motion for Preliminary Approval of Class-Action Settlement, seeking to have the Court approve the parties' settlement. (Joint Motion for Preliminary Approval of Class-Action Settlement and exhibits thereto, attached hereto as **Exhibit E**)

25.     On or about October 30, 2023, Lou Budke and Kyles, individually and on behalf of the Class, entered into a settlement agreement ("Settlement Agreement") pursuant to which the parties agreed to a "Total Class Benefit" as follows:

1.25.  **Total Class Benefit**. "Total Class Benefit" means the quantifiable benefits conferred upon the Class, including the Cash Fund of $185,000.00, the Gross Deficiency Write-Off Amount, which Lou Budke currently estimates as in excess of $850,000.00, and benefits conferred by Paragraph 3.11 for a Total Class Benefit exceeding $4,850,000.

(Class Action Settlement Agreement, Exhibit 1 to **Exhibit E**)

26.     The Class is defined in section 2.1 of the Settlement Agreement, subject to the exclusions in section 2.2:

2.1.  **Class**. The "Class" means all persons to whom Lou Budke mailed a presale notice or post-sale notice.

2.2.  **Exclusions**. Excluded from the Class are all persons whom Lou Budke has obtained a final deficiency judgment or who filed for bankruptcy after the date on their presale notice and whose bankruptcy ended in discharge rather than dismissal.

(Class Action Settlement Agreement, Exhibit 1 to **Exhibit E**)

27.     Section 3.10 of the Settlement Agreement further provides:

3.10  **Write-Off of Class Members' Account Balances or Lou Budke's Deficiency Claims.** The original amount and enforceability of the alleged deficiency balances outstanding on each Class Member's account is disputed in good faith. As a result of this good-faith dispute, Lou Budke shall write-off all deficiency balances on the loans associated with the allegedly defective presale and post-sale notices for the Class Members. The write-off of deficiencies shall operate to reduce the alleged obligations of the Class Members to zero. The Class shall be specifically informed by way of the notice to the class ("Class Mail Notice") of the potential tax consequences of the proposed settlement.

Promptly upon the Effective Date of the Agreement, Lou Budke will, regarding all Class Members, close all accounts that are the subject of the Litigation and write off any remaining deficiency balances then owed or claimed remaining as of the Effective Date on the Class Members' collateralized loans, as of the Effective Date and will cease all collections and attempts to collect monies regarding said closed accounts and written off balances. Upon Preliminary Approval being granted, Lou Budke shall not accept payments on Class Members' deficiency balances and will return any payment received by returning the payment instrument to the sender. If final approval is not granted, all collections on the closed accounts and written off balances after the date of Preliminary Approval shall be retained by Lou Budke. Lou Budke estimates the Deficiency Write-Off and all account balances and deficiency claims written off under the terms of this Agreement exceeds $850,000.00 and shall be included as part of the Total Class Benefit.

(Class Action Settlement Agreement, Exhibit 1 to **Exhibit E**)

28.     Section     3.11     of     the     Settlement     Agreement     further     provides:

3.11     **Credit Reporting by Lou Budke.** After the Effective Date, Lou Budke will cease reporting to the national credit reporting agencies (Experian, Equifax, TransUnion, and Innovis) (the "Credit Bureaus") there is any amount due or owing from the Class Members on the loans that are the subject of this Settlement. Within 30 days after the Effective Date, Lou Budke will submit to the Credit Bureaus, through an electronic file, a request to delete the trade line for each loan that is the subject of this Settlement.

The Parties acknowledge the Credit Bureaus are separate and distinct entities from Lou Budke. The Parties acknowledge that Lou Budke can request, but cannot guarantee, warrant, or take responsibility for the Credit Bureaus regarding changing, deleting, suppressing, or making entries regarding any credit information or other information regarding the Class Members' accounts concerning their loans or financing from Lou Budke for any loan by Lou Budke. Provided Lou Budke has undertaken its obligations in this Paragraph 3, Class Representatives and the Class Members waive all claims, whether arising in contract or tort, common law or statute, and/or federal or state law (including, but not limited to, claims for any damages, attorneys' fees and/or costs) against Released Persons that may arise subsequent to the Agreement or which arise out of

or relate to actions required to be taken by Lou Budke under this provision. If an item fails to get deleted or the reporting reoccurs on any account involved in this Litigation after Lou Budke's initial request, the only remedy of the Class Members as to Released Parties for the failure of any consumer or credit reporting agencies to amend the consumer or credit report is to request in writing that Lou Budke again request that its tradeline be deleted as to the relevant finance agreement. It shall be solely the obligation of the individual Class Members to review their respective credit reports with the consumer or credit reporting agencies to ensure that the consumer or credit reporting agencies have complied with Lou Budke's request to delete the tradeline.

(Class Action Settlement Agreement, Exhibit 1 to **Exhibit E**)

29.     Section 3.14 of the Settlement Agreement further provides:

3.14    **Judgment**. Notwithstanding anything to the contrary, Lou Budke will not contest a judgment being entered against it in an amount to be determined by the Court, comprising damages for wrongful repossession, libel/slander/defamation, invasion of privacy, and other uncertain or hard to quantify damages, plus pre-judgment interest and post-judgment interest. Kyles will seek a judgment equal to the statutory damages provided in § 9-625, the time price differential ("finance charge") paid by the Class, plus prejudgment interest and post-judgment interest. Other than the $185,000 to be paid by Lou Budke, the judgment shall indicate nothing may be satisfied from Lou Budke's assets for its obligations required under this Agreement and any remaining amount may only be satisfied from Lou Budke's insurers, insurance agents, or insurance brokers. The judgment may not be satisfied from attaching or otherwise acquiring other assets of Lou Budke or Lou Budke's officers, directors or shareholders. Lou Budke will cooperate with Kyles in obtaining the judgment, including waiving its rights to: (1) a jury trial; (ii) present evidence; (iii) object to evidence; (iv) question witnesses called by Kyles; (v) make argument to the Court in opposition to Kyles' arguments; and (vi) appeal any decision or judgment of the Court.

Notwithstanding anything to the contrary, Lou Budke will assign to the Class all its claims and rights against its insurers, insurance agents and brokers who issued policies in effect during the class period, including without limitation, any claims of bad faith failure to settle and breach of the duty to defend. If the Court grants final approval, then the Class may pursue claims against insurers to recover the judgment. Lou Budke agrees to cooperate in the collection efforts against the insurers, insurance agents and brokers.

The Class Members shall receive the funds remaining from any recovery from the insurers or insurance agents and bankers after any court-approved attorney's fees and costs are deducted.

(Class Action Settlement Agreement, Exhibit 1 to **Exhibit E**)

30.     On November 27, 2023, the Court entered a Preliminary Approval Order approving the Settlement. (Preliminary Approval Order, attached hereto as **Exhibit F**)

31.     On April 16, 2024, the Court entered a Final Approval Order and Final Judgment (Final Approval Order, attached hereto as **Exhibit G**, Final Judgment, attached hereto as **Exhibit H**)

**B.     The Addison Policies**

32.     Addison issued Policy No. 60319219 to named insured Arrow Finance Company, with effective dates of February 28, 2012 to February 28, 2013, which was renewed for the policy periods of February 28, 2013 to February 28, 2014, February 28, 2014 to February 28, 2015, February 28, 2015 to February 28, 2016, February 28, 2016 to February 28, 2017, and February 28, 2017 to February 28, 2018, after which time it was not renewed (collectively the "Policies"). A copy of the 2012-2013 Policy is attached hereto as **Exhibit I**, a copy of the 2013-2014 Policy is attached hereto as **Exhibit J**, a copy of the 2014-2015 Policy is attached hereto as **Exhibit K**, a copy of the 2015-2016 Policy is attached hereto as **Exhibit L**, a copy of the 2016-2017 Policy is attached hereto as **Exhibit M**, and a copy of the 2017-2018 Policy is attached hereto as **Exhibit N**, and all fully incorporated herein.

33.    The 2012-2013, 2013-2014, 2014-2015, and 2015-2016 Policies include a Commercial General Liability Coverage Form 00 01 12 07, together with supplemental and amendatory exclusions and endorsements.

34.    The 2016-2017 and 2017-2018 Policies include a Commercial General Liability Coverage Form 00 01 04 13, together with supplemental and amendatory exclusions and endorsements.

35.    SECTION I – COVERAGE A of the Policies applies to liability for covered "bodily injury" and "property damage", as defined by Section V., Paragraphs 3 and 17 of the Policies.

36.    SECTION I – COVERAGE A of all Policies provides, in relevant part:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABLITY**

**1.    Insuring Agreement**
    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies…
    …
    b.  This insurance applies to "bodily injury" and "property damage" only if:
    …
      (1)  The "bodily injury" or "property damage" is caused by an "occurrence"…
    …

37.    SECTION I – COVERAGE A of all Policies includes the following exclusions:

**2.    Exclusions**
This insurance does not apply to:
    **a.    Expected Or Intended Injury**
      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured…
    …

38.    SECTION I – COVERAGE B of the Policies applies to liability for covered "personal and advertising injury", as defined by Section V., Paragraph 14 of the Policies.

39.     SECTION I – COVERAGE B, Paragraph 1 of all Policies provides, in relevant

part:

**COVERAGE B PERSONAL AND ADVERTISING INJURY**

    **1.**    **Insuring Agreement**
        a.  We will pay those sums that the insured becomes legally obligated to pay
            as damages because of "personal and advertising injury" to which this
            insurance applies…
            …
        b.  This insurance applies to "personal and advertising injury" caused by an
            offense arising out of your business but only if the offense was committed
            in the "coverage territory" during the policy period.
    …

40.     SECTION I – COVERAGE B of all Policies includes the following exclusions, in

relevant part:

    **2.**    **Exclusions**
    This insurance does not apply to:
    **a.**  **Knowing Violation Of Rights Of Another**
        "Personal and advertising injury" caused by or at the direction of the insured
        with the knowledge that the act would violate the rights of another and
        would inflict "personal and advertising injury".
    **b.**  **Material Published With Knowledge Of Falsity**
        "Personal and advertising injury" arising out of oral or written publication
        of material, if done by or at the direction of the insured with knowledge of
        its falsity.
    …

41.     SECTION V of all Policies contains the following definitions:

    …
    **3.**    "Bodily injury" means bodily injury, sickness or disease sustained by a
        person, including death resulting from any of these at any time.
    …

    **14.**    "Personal and advertising injury" means injury including consequential
        "bodily injury", arising out of one or more of the following offenses:
        …
        d.    Oral or written publication, in any manner, of material fact that
            slanders or libels a person or organization or disparages a person's
            or organization's goods, products or services;

      e.     Oral or written publication, in any manner, of material that violates a person's right to privacy;

…

**17.**    "Property damage" means:

      a.     Physical injury to tangible property, including all resulting loss of use of that property…

      b.     Loss of use of tangible property that is not physically injured…

…

42.    Section IV – COMMERCIAL GENERAL LIABILITY CONDITIONS of all Policies states:

...

**2.**    **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

      **a.**    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim...

      **b.**    If a claim is made or "suit" is brought against any insured, you must:

        ...

        (2).    Notify us as soon as practicable

      **c.**    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

        You and any other involved insured must:

        (1).    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit"[.]

        ...

      **d.**    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

43.    All Policies contain the following endorsement regarding the definition of "Occurrence", by Form 70 86 04 11:

**OCCURRENCE REDEFINED**

…

**13.**    "Occurrence" means:

      **a.**    An accident, including continuous or repeated exposure to substantially the same general harmful conditions; or

      **b.**    "Property damage" included in the "products-completed operations hazard" arising from:

        1.    your acts or omissions; or

> 2.    the acts or omissions of a subcontractor performing work on your behalf.
>
> …

44.    The 2012-2013, 2013-2014, 2014-2015, and 2015-2016 Policies contains an exclusion for "professional services", by Form CG 21 16 07 98, which excludes loan services and professional services identified on the Declarations page for the respective Policies, contains the information to complete the Schedule in the Exclusion, which is that Lou Budke is engaged in, among other things, banking and activities of a finance company, which includes loan servicing.

45.    The 2016-2017 Policy contains an exclusion for "professional services", by Form CG 21 16 04 13, which excludes professional services identified on the Declarations page for the 2016-2017 Policy, which contains the information to complete the Schedule in the Exclusion, which is that Lou Budke is engaged in, among other things, banking and activities of a finance company, which includes loan servicing.

46.    The 2017-2018 Policy contains an exclusion for "professional services", by Form CG 21 16 04 13, which excludes loan services and professional services identified on the Declarations page for the 2017-2018 Policy, which contains the information to complete the Schedule in the Exclusion, which is that Lou Budke is engaged in, among other things, banking and activities of a finance company, which includes loan servicing.

47.    The Policies contain the following exclusion for punitive damages by Form IL 70 09 04 91:

**PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION**

> Regardless of any other provision of this policy, this policy does not apply to punitive or exemplary damages.

## C.    <u>Coverage Analysis</u>

48.    In accordance with the Policies' provisions quoted above, the Policies do not cover the claims asserted against Lou Budke in the Amended Counterclaim.

49.    Section I, Coverage A of the Policies, Bodily Injury and Property Damage Liability, is not triggered and provides no coverage because the Amended Counterclaim does not allege any "bodily injury" or "property damage", as defined in the Policies.

50.    Section I, Coverage A of the Policies is also not triggered and provides no coverage because there was no "occurrence" as required by Paragraph 1 of Coverage A, the Insuring Agreement, and as defined by endorsement, OCCURRENCE REDEFINED Form IL 70 86 04 11 as an accident. Kyles' allegations arise from Lou Budke's routine loan collection practices and do not result from an "accident" as defined by the Policies.

51.    Coverage may also be excluded under Section I, Coverage A pursuant to Exclusion 2.a. to the extent it is determined Kyles' and Class members' alleged injuries were expected or intended, given that Kyles initially alleged that Lou Budke's conduct was deceptive, and was "wanton, outrageous, and/or malicious because of its reckless indifference to or conscious disregard of consumer rights." (Counterclaim, **Exhibit B**, ¶¶ 1, 36, 86). Kyles removed these allegations from the Amended Counterclaim in an attempt to create coverage, however still alleged that Lou Budke's actions were deceptive. (Amended Counterclaim, **Exhibit C**, ¶ 44).

52.    Coverage may also be excluded under Section II, Coverage B of the Policies, Personal and Advertising Injury Liability, pursuant to Exclusions 2.a. and/or 2.b. to the extent it is determined Lou Budke knowingly violated the rights of Kyles and Class members or published material with knowledge of its falsity, given that Kyles initially alleged Lou Budke's conduct was deceptive and was "wanton, outrageous, and/or malicious because of its reckless indifference to

or conscious disregard of consumer rights." (Counterclaim, **Exhibit B**, ¶¶ 1, 36, 86). Kyles removed these allegations from the Amended Counterclaim in an attempt to create coverage, however still alleged that Lou Budke's actions were deceptive. (Amended Counterclaim, **Exhibit C**, ¶ 44).

53.     An endorsement to the 2012-2013, 2013-2014, 2014-2015, and 2015-2016 Policies, EXCLUSION – DESIGNATED PROFESSIONAL SERVICES Form CG 21 16 07 98, excludes from coverage injury or damage resulting from Lou Budke's rendering of loan services and professional services as noted in the Declarations page, which includes, among others, banking and activities of a finance company, which also includes loan servicing. Kyles' allegations all arise from Lou Budke's providing banking and financing services and servicing of the loan Lou Budke made to Kyles and all members of the Class whom Kyles represents, for the purchase of an automobile, including its collection and attempted recovery of installment payments, and the collection of an alleged deficiency.

54.     An endorsement to the 2016-2017 and 2017-2018 Policies, EXCLUSION – DESIGNATED PROFESSIONAL SERVICES Form CG 21 16 04 13, excludes from coverage injury or damage resulting from Lou Budke's rendering of loan services and professional services as noted in the Declarations page, which includes, among others, banking and activities of a finance company, which also includes loan servicing. Kyles' allegations all arise from Lou Budke's providing banking and financing services and servicing of the loan Lou Budke made to Kyles and all members of the Class whom Kyles represents, for the purchase of an automobile, including its collection and attempted recovery of installment payments, and the collection of an alleged deficiency.

55.     An endorsement to the Policies, PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION Form IL 70 09 04 91, provides that the Policies do not apply to punitive or exemplary damages. Kyles made a claim for punitive damages in the Counterclaim, which he removed from the Amended Counterclaim in an attempt to create insurance coverage. To the extent punitive damages are alleged or found, punitive damages are excluded from coverage under the Policies.

56.     Nevertheless, upon information and belief based on allegations contained in the Joint Motion for Preliminary Approval of Class Action Settlement, attached hereto as **Exhibit E**, and Class Action Settlement Agreement, Exhibit 1 to **Exhibit E**, Kyles intends to seek recovery from Addison for damages entered against Lou Budke pursuant to a stipulated Judgment, which incorporates Kyles' proposed Final Approval Order as alleged in paragraph 28 of this Complaint.

57.     In accordance with the foregoing Policies' terms and exclusions, Addison is not obligated to defend Lou Budke, nor is it required to indemnify Lou Budke or anyone else for Kyles' claims made in the Underlying Lawsuit because the Policies attached as **Exhibits I, J, K, L, M,** and **N** do not cover the claims asserted in the Amended Counterclaim.

58.     Addison is further not obligated to defend or indemnify Lou Budke or anyone else in the Underlying Lawsuit, because it has been prejudiced by Lou Budke's failure to give proper notice of the claims and failure to give proper notice of the proposed settlement.

59.     Coverage under the Policies is further barred by the loss in progress doctrine.

60.     Coverage under the Policies is further barred by the fortuity doctrine.

61.     Addison brings this declaratory judgment action pursuant to 28 U.S.C. § 2201 and states that there is an actual, justiciable controversy between Addison, Lou Budke, Kyles and the

Class an asks that this Court declare the rights and obligations of the parties with respect to the insurance policies attached as **Exhibits I, J, K, L, M,** and **N**.

**D.**     <u>The Demand to Addison</u>

62.     On August 4, 2016, Kyles filed the Counterclaim against Lou Budke. (Counterclaim, **Exhibit B**)

63.     Lou Budke failed to notify Addison of the Counterclaim as soon as practicable, as is required by SECTION IV – COMMERCIAL GENERAL LIABLITY CONDITIONS of the Policies.

64.     Over ten months later, on or about June 16, 2017, Lou Budke's counsel in the Underlying Action tendered the Counterclaim to Addison seeking coverage under the Policies. (Counterclaim, **Exhibit B**)

65.     During the time the Counterclaim was pending but before Lou Budke provided notice to Addison, Lou Budke incurred legal fees and other expenses without Addison's consent.

66.     On June 29, 2017, Addison issued a Declination of Coverage to Lou Budke based on the allegations in the Counterclaim.

67.     On June 21, 2027, Kyles filed the Amended Counterclaim against Lou Budke adding baseless and conclusory allegations for the express purpose of attempting to circumvent the numerous reasons there is no coverage under the Policies for these claims.

68.     On June 24, 2017, Lou Budke tendered the Amended Counterclaim to Addison, which was filed on July 21, 2017.

69.     On August 8, 2017, Addison issued a second letter denying coverage for the allegations in the Amended Counterclaim.

70.     Addison did not receive any further notice regarding the Underlying Lawsuit and did not receive notice of the October 30, 2023 Settlement Agreement until its receipt of correspondence from Kyles' counsel on April 8, 2024 providing notice of the same.

71.     Based on the allegations set forth above, Lou Budke failed to comply with the notice requirements of the Policies, Addison was prejudiced by the lack of timely notice, and there is no coverage under the Policies due to Lou Budke's failure to comply with its terms.

## PRAYER FOR DECLARATORY RELIEF

Plaintiff Addison prays that defendants be cited to appear and answer and, upon final trial, Addison be granted judgment as follows:

A.     A declaration that the policies of insurance issued by Addison, as alleged, provides no coverage for and no duty on behalf of Addison to provide a defense to Lou Budke, or anyone else, for the claims asserted in the lawsuit styled *Lou Budke's Arrow Finance Company v. Richad Kyles, et al.*, Case No. 15SL-AC29334-01;

B.     A declaration that the policies of insurance issued by Addison, as alleged, provides no coverage for and no duty to indemnify Lou Budke, or anyone else, for the claims asserted in the lawsuit styled *Lou Budke's Arrow Finance Company v. Richard Kyles, et al.*, Case No. 15SL-AC29334-01, pending in the Circuit Court of St. Louis County, Missouri;

C.     A declaration that Addison shall have no duty or obligation to pay on behalf of Lou Budke or anyone else any sum that Lou Budke or anyone else may become obligated to pay by way of settlement or judgment in connection with the lawsuit styled *Lou Budke's Arrow Finance Company v. Richard Kyles, et al.*, Case No. 15SL-AC29334-01, pending in the Circuit Court of St. Louis County, Missouri;

D.    Addison prays for trial by jury on all issues so triable; and

E.    For such additional and further relief as this Court deems proper and just.


Respectfully submitted,

**BROWN & RUPRECHT, PC**


By: */s/ John L. Hayob*
    John L. Hayob, MO #61335
    Diane Hastings Lewis, MO State #61143
    (*application pending*)
    jhayob@brlawkc.com
    dlewis@brlawkc.com
    2323 Grand Blvd., Suite 1100
    Kansas City, Missouri 64108
    (816) 292-7000 Telephone
    (816) 292-7050 Facsimile
    **ATTORNEYS FOR PLAINTIFF ADDISON
    INSURANCE COMPANY**