UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ADDISON INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:24-cv-00790-JAR |
| ) | |
| LOU BUDKE'S ARROW FINANCE ) | |
| COMPANY and RICHARD KYLES, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Richard Kyles' motion to dismiss or stay the case pending the outcome of the underlying state court action. ECF No. 29. Plaintiff Addison Insurance Company filed its response (ECF No. 33), and Defendant Kyles filed a reply (ECF No. 37). This matter is now fully briefed and ripe for disposition. For the reasons set forth below, the Court will grant in part and deny in part Kyles' motion.

**Background**[1]

A.  The Underlying Action Before the Filing of Plaintiff's Complaint

Before the Court can meaningfully discuss the issues raised by Addison's Complaint, it must first discuss the relevant background information regarding the Missouri state court case styled *Lou Budke's Arrow Finance Co. v. Richard Kyles, et al.*, Case No. 15SL-AC29334-01 (St. Louis Cnty. Cir. Ct.) (the "Underlying Action").

---

[1] Unless otherwise noted, all facts in this section are alleged in Addison's Complaint and are accepted as true for the purposes of this motion only. *McShane Constr. Co. v. Gotham Ins. Co.*, 867 F.3d 923, 927 (8th Cir. 2017).

1

Plaintiff Addison is an insurance company organized under the law of the State of Iowa with its principal place of business in Iowa.  Defendant Lou Budke's Arrow Finance Co. is a Missouri corporation with its principal place of business in Missouri.  Defendant Kyles is an individual and citizen of the State of Illinois.

Between approximately February 28, 2012, and February 28, 2018, Addison issued to Arrow several insurance policies, which, in part, supplied Arrow with Commercial General Liability Coverage.  *See* ECF Nos. 1-9–1-14 (the "Policies").

On November 18, 2015, Arrow filed the Underlying Action in the Associate Circuit Court of St. Louis County, Missouri (the "Associate Court").[2]  In its Petition, Arrow alleges that Defendant Kyles defaulted on a retail installment contract for the purchase of an automobile and that Kyles owed Arrow $3,206.18 under the contract.  On August 4, 2016, Kyles filed a counterclaim against Arrow alleging that Arrow "engaged in a deceptive pattern of wrongdoing . . . regarding collection, enforcement, repossession and disposition of collateral, and collection of aged accounts."  Kyles' Petition initiated a consumer class action on behalf of himself and others similarly situated.  On August 29, 2016, after the Associate Court found that the amount requested in the counterclaim exceeded the court's jurisdictional limits, it certified the case for transfer to the Circuit Court of St. Louis County (the "Circuit Court").

Kyles' counterclaim alleged that Arrow violated several provisions of the Uniform Commercial Code ("UCC") by engaging in an unlawful and deceptive pattern of wrongdoing.  Kyles also alleged that Arrow's actions were "wanton, outrageous, and/or malicious because of

---

[2]   The original state court action created pursuant to Arrow's Complaint was styled *Lou Budke's Arrow Finance Company v. Richard Kyles*, with case number 15SL-AC29334.

its reckless indifference to or conscious disregard" for Kyles' and the class member's consumer rights, and Kyles sought punitive damages. ECF No. 1-2 at 15.

On July 21, 2017, Kyles filed an amended counterclaim in the Circuit Court. ECF No. 1-3. In the amended counterclaim, Kyles alleges that: "This lawsuit is not due to [Arrow]'s rendering of or failure to render any professional service, including loan services. This lawsuit is not due to [Arrow]'s repossession of the class members' collateral." *Id.* at 3. Kyles further alleges that: defective presale and post-sale notices sent by Arrow to Kyles and purported class members were not sent with knowledge of their falsity; Arrow's reporting of false or inaccurate derogatory information on the class members' credit reports was not done with knowledge of its falsity; acts that violated various statutes required no professional skill; acts that violated various statutes required no specialized knowledge, labor, or skill; Arrow did not intend to violate Chapter 408 of the UCC and did not intend injury to the class; Arrow did not know the presale and post-sale notices and its reporting of information on the class members' credit reports would violate the rights of the class members or inflict injury upon them; Arrow's negligent misrepresentations in the pre and post-sale notices were the proximate cause of the loss of use of the vehicles because they precluded the class members from reclaiming their collateral before it was sold; and Arrow's negligent misrepresentations in the notices were also the proximate cause of the loss of use of the class member's surplus funds owed them after the sale of the collateral and the money each class member paid, which was barred by state and common law. *Id.* at 7–8.

On July 29, 2017, Plaintiff issued a Declination of Coverage to Arrow Finance based on the allegations in the counterclaim in the Underlying Action. ECF No. 1 at 19. On August 8, 2017, Plaintiff issued a second letter denying coverage for allegations in Kyles' amended counterclaim. *Id.* at 19.

3

On November 6, 2019, the Circuit Court certified a class in Kyles' counterclaim, which it defined as "all persons who [Arrow] mailed a presale notice or post-sale notice," and excluding from the class "persons whom [Arrow] has obtained a final deficiency judgment or who filed for bankruptcy after the date on their presale notice and whose bankruptcy ended in discharge rather than dismissal." ECF No. 1-4 at 1.

On or about October 30, 2023, Arrow and Kyles entered into a settlement agreement, which stated, in relevant part:

> Notwithstanding anything to the contrary, [Arrow] will assign to the Class all its claims and rights against its insurers, insurance agents and brokers who issued policies in effect during the class period, including without limitation, any claims of bad faith failure to settle and breach of the duty to defend. If the Court grants final approval, then the Class may pursue claims against insurers to recover the judgment. [Arrow] agrees to cooperate in the collection efforts against the insurers, insurance agents and brokers.
>
> The Class Members shall receive the funds remaining from any recovery from the insurers or insurance agents and bankers after any court-approved attorney's fees and costs are deducted.

ECF No. 1-5 at 10. On October 30, 2023, Arrow and Kyles filed a Joint Motion for Preliminary Approval of Class-Action Settlement seeking the Circuit Court's preliminary approval of the parties' class-action settlement.

On November 27, 2023, the Circuit Court entered a Preliminary Approval Order approving of Arrow's and Kyles' settlement agreement. ECF No. 1-6. On April 15, 2024, Addison moved to intervene as a matter of right to defend against the claims asserted against Arrow. ECF No. 29-2 at 2. On April 16, 2024, the Circuit Court entered a Final Approval Order and Final Judgment reflecting the settlement agreement's terms. ECF Nos 1-7 and 1-8. On May 29, 2024, the Circuit Court granted Addison's motion to intervene. ECF No. 29-2 at 2.

B.  Addison's Complaint

On June 5, 2024, Addison filed its declaratory judgment action in this Court. Addison asks the Court to declare the rights and legal relations between itself, Arrow, and Kyles as it relates to the Policies and the Underlying Action.

Addison further alleges that the newly pleaded allegations in Kyles' amended counterclaim in the Underlying Action were "made for the sole purpose of attempting to establish insurance coverage where none exists." ECF No. 1 at 5. Specifically, Addison labels the following allegations added in the amended counterclaim as conclusory: (1) the lawsuit was not due to Arrow's rendering of or failure to render professional services; or (2) Arrow's repossession of the class members collateral and other allegations disclaiming any intend on the part of Arrow to harm Kyles or the class members.

More generally, Addison alleges that the Policies exclude coverage for "professional services" like loan servicing and financing and for punitive damages. *Id.* at 15. Addison disputes whether the Policies offer Arrow any coverage related to the Underlying Action. Addison further alleges that it has no duty to defend or indemnify Arrow per the terms of the Policies and because Arrow failed to give Addison proper notice of the claims in the Underlying Action. *Id.* at 18. Addison also states that it did not receive notice of the October 30, 2023, settlement agreement between Arrow and Kyles until April 8, 2024. *Id.* at 20.

C.  Developments in the Underlying Action

On June 6, 2024, the day after Addison filed this declaratory judgment action, Kyles moved in the Underlying Action for leave to assert a counterclaim against Addison. On July 30, 2024, Kyles, Addison, and Mesa Underwriters Specialty Insurance Company[3] came before the

---

[3]  Like Plaintiff, Mesa is an intervening plaintiff and intervening counterclaim defendant in the Underlying Action.

5

Circuit Court for argument on Kyles' motion for leave to file counterclaims and Mesa's motion to set aside judgment. At oral argument, Plaintiff orally joined Mesa's motion to set aside judgment. On October 18, 2024, the Circuit Court granted Mesa's motion to set aside judgment, and on December 3, 2024, the Circuit Court granted Kyles' motion for leave to file counterclaims against Addison and Mesa. ECF No. 29-1.

Kyles' counterclaim against Addison in the Underlying Action raises four Counts. In Count I, Kyles asks for a declaratory judgment that Addison has a duty to defend and duty to indemnify Arrow against Kyle's counterclaim under the terms of the Policies. In Counts II and III, Kyles' raises claims of breach of contract for Addison's alleged failure to indemnify and failure to defendant Arrow under the Policies. In Count IV, Kyles alleges that Addison acted in bad faith by failing to defend or settle Kyles' counterclaim against Arrow in the Underlying Action. ECF No. 29-2.

        D.      <u>Kyles' Motion to Dismiss or Stay</u>

On December 9, 2024, Kyles filed the instant motion to dismiss or stay and an accompanying memorandum of law in support. ECF Nos. 29 and 30. Specifically, Kyles argues that this case should be dismissed or stayed under the *Wilton/Brillhart* abstention doctrine because (1) this action is parallel with the Underlying Action; (2) Missouri law controls the issues; (3) all claims raised by Addison in this declaratory judgment action can be decided in the Underlying Action; (4) all parties are joined in the Underlying Action; and (5) the Underlying Action is more than adequate to resolve the disputes raised by Addison's Complaint.

On December 31, 2024, Addison filed its response in opposition to Kyles' motion. ECF No. 33. Addison makes several arguments for why this case should not be dismissed under *Wilton/Brillhart* abstention principals. At the outset, Addison cites to a recent Missouri Supreme

6

Court case, *McCrackin v. Mullen*, 701 S.W.3d 868, 876 (Mo. 2024) (en banc), for the contention that the Missouri Supreme Court has approved of Addison's filing of this declaratory judgment action when it stated that "[i]nsurers with good faith coverage questions should file a declaratory judgment action simultaneous with the underlying tort action and seek a stay of the tort action until the declaratory judgment action is resolved."

The bulk of Addison's remaining arguments are couched in terms of a six-factor test adopted by the Fourth Circuit and used by the Eighth Circuit in *Scottsdale Insurance Co. v. Detco Industries, Inc.*, 426 F.3d 994, 998 (8th Cir. 2005). These factors are:

> (1) [W]hether the declaratory judgment sought will serve a useful purpose in clarifying and settling the legal relations in issue; (2) whether the declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the federal proceeding; (3) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; (4) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (5) whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems because of the presence of overlapping issues of fact or law; and (6) whether the declaratory judgment action is being used merely as a device for procedural fencing—that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removeable.

*Id.* (citing *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998)) (cleaned up). Addison addresses each factor as discussed below.

First, Addison argues that the Court should exercise jurisdiction over the declaratory judgment action because it was the first filed, i.e., Addison filed this declaratory judgment action before Kyles filed his counterclaim against Addison in the Underlying Action. Addison invokes Missouri's doctrine of abatement, citing *Estate of Holtmeyer v. Piontek*, for the contention that where claims involving the same subject matter, same parties, same facts, and same issues exist, the Court should resolve those issues in the first filed action and dismiss the later filed action.

7

ECF No. 33 at 7 (quoting *Est. of Holtmeyer v. Piontek*, 913 S.W.3d 352, 357 (Mo. Ct. App. 1996)).

Second, Addison argues that the issues raised in its Complaint cannot be adjudicated in the Underlying Action.  This is true, Addison contends, because Kyles' lacks standing in the Underlying Action to raise a claim against Addison.  According to Addison, because Kyles' was not a party to the Policies—i.e., insurance contracts between Addison and Arrow—Kyles does not have a legally protected interest at stake and therefore he cannot raise claims against Addison under the Policies.  Addison makes much of the fact that, after the Circuit Court set aside its judgment in the Underlying Action, Kyles no longer has a court approved settlement or judgment and therefore cannot claim any right to enforce the Policies.

Third, Addison asserts that the issues it has raised in the Complaint are better handled in this Court and can be more readily decided here without the distraction of the myriad issues still to be decided in the Underlying Action.  Basically, Addison argues that adjudication of the insurance issues in this Court will be more efficient than it would be if taken up by the Circuit Court.

Fourth, Addison argues that the issues at stake in this declaratory judgment action are not of any particular interest to the State of Missouri because contract law does not vary much across states and this Court frequently determines legal issues governed by Missouri law.

Fifth, Addison avers that there is no unnecessary entanglement of issues between this case and the Underlying Action because the issues here are strictly legal issues and will not require this Court to wade into the merits of factual arguments at issue in the Underlying Action.

Sixth, Addison argues that Kyle's counterclaim against Addison in the Underlying Action is being used merely as a device for procedural fencing, i.e., "to frustrate Addison's attempt to

8

have coverage issues resolved quickly, efficiently, and independently" by this Court.  ECF No. 33 at 11.  Addison claims that Kyles' is simply trying to add to the nuisance value of his claims by placing as many procedural obstacles as possible between Addison and a resolution of the declaratory judgment action.

      Finally, Addison asserts that should the Court agree with Kyles, it should stay the case rather than dismiss it outright.

      In his reply, Kyles contends that Addison's reliance on *McCrackin* is unavailing because the Missouri Supreme Court also stated that declaratory judgment actions should be filed "in the same court as the tort action whenever possible" because it "will ensure coverage questions can be determined in a consistent manner to prevent unnecessary delay of the underlying tort action." *McCrackin*, 701 S.W.3d at 877 n.11.  Kyles then goes on the explain that the remainder of Kyles' arguments for why the Court should deny the motion are irrelevant to whether the Court should abstain from deciding this declaratory judgment action under *Wilton*/*Brillhart* abstention principles.  Kyles argues that Addison has not even attempted to establish that this case is not parallel to the Underlying Action outside of its attempt to argue to this Court that Kyles lacks standing to raise a declaratory judgment counterclaim in the Underlying Action.  According to Kyles, the issue of Kyles' standing and Addison's abatement argument have already been heard and rejected by the Circuit Court in the Underlying Action.  Regarding the six-factor *Scottsdale* test, Kyles asserts that the test is simply inapplicable here because the test is designed to be used to determine whether the Court should hear a declaratory judgment action when no parallel state court proceeding exists, but here there is a parallel state action.  ECF No. 37 at 6–7 (quoting *Consumers Ins. USA, Inc. v. Trexler*, 618 F. Supp. 3d 844, 849 (E.D. Mo. 2022)).

**Discussion**

"As a general rule, a federal district court must exercise its jurisdiction over a claim unless there are exceptional circumstances for not doing so. But this general rule yields to practical considerations and substantial discretion when the federal complaint seeks a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a)." *Wagstaff & Cartmell, LLP v. Lewis*, 40 F.4th 830, 842 (8th Cir. 2022) (cleaned up). This Court has "unique and substantial" discretion to decide whether to decide cases raised under the Declaratory Judgment Act. *Id.* (citing *Lexington Ins. Co. v. Integrity Land Title Co.*, 721 F.3d 958, 967 (8th Cir. 2013)); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). It is well settled that the Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right on the litigant." *James River Ins. Co. v. Impact Strategies, Inc.*, 699 F. Supp. 2d 1086, 1088 (E.D. Mo. 2010) (quoting *Wilton*, 515 U.S. at 287).

The Supreme Court in *Wilton* recognized the continuing application of *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942) to a declaratory judgment action:

> Over 50 years ago, in *Brillhart* . . . , this Court addressed circumstances virtually identical to those present in the case before us today. An insurer, anticipating a coercive suit, sought a declaration in federal court of nonliability on an insurance policy. This District Court dismissed the action in favor of a pending state garnishment proceedings, to which the insurer had been added as a defendant. . . . [T]his Court held that, "although the District Court had jurisdiction of the suit under the Federal Declaratory Judgments [sic] Act, it was under no compulsion to exercise that jurisdiction." The Court explained that "ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in state court presenting the same issues, not governed by federal law, between the same parties." The question for a district court presented with a suit under the Declaratory Judgment Act, the Court found, is "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court."

*Wilton*, 515 U.S. at 282 (quoting *Brillhart*, 316 U.S. at 494–95) (internal citations omitted).

The Eighth Circuit has instructed the district courts that the "key consideration is to ascertain whether the issues in controversy between the parties to the federal action can be better settled by the state court in light of the scope and nature of the pending state court proceeding." *Evanston Ins. Co. v. Johns*, 530 F.3d 710, 713 (8th Cir. 2008) (internal citations and quotation marks omitted).  The Eighth Circuit has further instructed the district courts to dismiss the federal action when the issues would be better settled in a pending state court proceeding because "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Capitol Indem. Corp. v. Haverfield*, 218 F.3d 872, 874 (8th Cir. 2000) (quoting *Brillhart*, 316 U.S. at 495).  "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums."  *Scottsdale*, 426 F.3d at 997 (citations and internal quotation marks omitted).  Under *Brillhart*, the Court must also consider "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amendable to process in that proceeding. . . ."  *Royal Indem. Co. v. Apex Oil Co.*, 511 F.3d 788, 793 (8th Cir. 2008) (quoting *Brillhart*, 316 U.S. at 495).

Here, the Court finds that abstention is proper under the *Wilton*/*Brillhart* abstention doctrine because the Underlying Action is a parallel state court action and the issued raised in this action can be satisfactorily adjudicated in the Underlying Action.  Addison brought this declaratory judgment action against Kyles and Arrow while a separate proceeding between Kyles and Arrow existed in the Underlying Action.  While Addison was not yet a party to the Underlying Action when it filed this case, after the Circuit Court granted Kyles' motion for leave to file a declaratory judgment counterclaim against Addison, it became a party to that case.  The

11

issue of insurance coverage and Addison's duty to defend under the same Policies at issue in this case are now in controversy in the Underlying Action.  Additionally, the issue of Addison's duty to defend and whether the Policies cover Arrow's alleged actions at issue in the Underlying Action are governed by Missouri law.  These issues can be adequately decided by the Circuit Court in the Underlying Action, which has been pending in the Circuit Court for nearly a decade.  Considering these factors, the Court finds that the Underlying Action is parallel to this case.  The Court will therefore exercise its discretion and abstain from deciding the issues raised in Addison's Complaint, at least until it can be assured that the Circuit Court has not or will not address the insurance coverage and duty to defend issues.

Addison's attempts to maintain its claims in this Court are unavailing.  As an initial matter, Addison does not argue that this case and the Underlying Action are not parallel.  As Kyles correctly points out, Addison does not appear to address the primary factors the court must consider under *Wilton* and *Brillhart*, and therefore most of its arguments in opposition are irrelevant to the Court's analysis.

Addison's reliance on the six-factor *Scottdale* test is misplaced.  As pointed out by Kyles in his reply, the Eighth Circuit adopted the six-factor test in *Scottsdale* specifically to determine when it would be appropriate for a district court to exercise its discretion not to hear a case under the Declaratory Judgment Act "when there are no parallel state court proceedings."  *Scottsdale*, 426 U.S. at 998; *see also Trexler*, 618 F. Supp. 3d at 849 ("Because *Scottsdale* addressed the extent of a federal court's discretion to abstain from jurisdiction over a declaratory judgment action *in the absence of parallel state proceedings*, the Court need not apply the *Scottsdale* six-factor test.") (citation omitted).  Because there is a parallel state court action pending, *Scottsdale*'s six-factor test does not apply, and the Court need not assess such factors.

12

Addison's attempt to invoke Missouri's doctrine of abatement and the first-filed rule are similarly unconvincing. In fact, the Eighth Circuit in *Haverfield* ruled that the district court abused its discretion by hearing a declaratory judgment action with a similar procedural posture. 218 F.3d at 875 (finding abuse of discretion when the district court denied motion to dismiss simply because the declaratory judgment action was filed in the district court before it was raised in the associated state court action); *see also W. Heritage Ins. Co. v. Sunset Sec., Inc.*, 63 F. App'x 965, 967 (8th Cir. 2003) ("[W]e note we have previously concluded that abstention was required even when the declaratory judgment action was filed months before the state-court action."); *Trexler*, 618 F. Supp. 3d at 850 ("Federal courts routinely abstain . . . regardless of whether the federal actions was filed first."). Here, the Court finds no reason to maintain jurisdiction over this matter just because Addison filed its declaratory judgment action before Kyles' raised his declaratory judgment counterclaim in the Underlying Action. The actions are parallel, and abstention is proper for the reasons already stated.

The Court need not wade into the standing arguments raised by Addison in its opposition memorandum as any issues of Kyles' standing to raise a declaratory judgment counterclaim against Addison in the Underlying Action must instead be decided—and apparently already have been decided—by the Circuit Court.

Finally, the recent Missouri Supreme Court decision in *McCrackin* does not necessitate a different outcome. Addison contends that their filing of a declaratory judgment action in this Court is in line with the advice provided by the Missouri Supreme Court in *McCrackin*. But Addison either ignores or obfuscates the differences between that advice and their actions. The Missouri Supreme Court stated that "[i]nsurers with good faith coverage questions should file a declaratory judgment action simultaneous with the underlying tort action and seek a stay of the

13

tort action until the declaratory judgment action is resolved." 701 S.W.3d at 876.  It further advised "that insurers file the declaratory judgment action in the same court as the tort action whenever possible." *Id.* at 877 n.11.  Addison filed its declaratory judgment action in this Court and not in the Circuit Court, and Addison has not sought a stay of the Underlying Action until this declaratory judgment action is resolved.  The Court finds no reason to credit *McCracken* as blessing Addison's actions here when Addison does not appear to have followed the advice on which it now relies.

The only remaining issue is whether the Court should abstain by dismissing this matter outright or stay this matter pending resolution of these issues in the Underlying Action.  The Court believes that it is at least possible that the insurance coverage and duty to defend issues will not be fully resolved in the Underlying Action.  Therefore, staying this matter pending resolution of those issues in the Underlying Action is appropriate.  In lieu of dismissal, the Court will stay and administratively close this matter pending resolution of the Underlying Action.

**Conclusion**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss or stay is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that this case is **STAYED** and administratively closed pending resolution of the insurance coverage issues raised in the Underlying Action. Any party to this action may move to lift the stay and reopen this case at any time for good cause shown.

**IT IS FURTHER ORDERED** that the parties shall file within **six (6) months** of the date of this Order, and again every six months thereafter, a joint status report describing the then current state of the Underlying Action.

Dated this 11th day of February, 2025.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE